J. HENRIJEAN & SONS, as Subrogee of International Selling Corporation, Plaintiff,

v.

M. V. BULK ENTERPRISE, her engines, boilers, etc.; Michigan Express, Inc., a Michigan corporation, and American Commercial Barge Lines, Defendant.

Civ. A. No. 6110.

United States District Court,
W. D. Michigan, S. D.

April 2, 1970.

Davies, Rudzki & Zeder, Detroit, Mich., for plaintiff; Lawrence H. Rudzki, Detroit, Mich., of counsel.

Schmidt, Smith & Howlett, Grand Rapids, Mich., for American Commercial Barge Lines; Laurence D. Smith, Grand Rapids, Mich., of counsel.

Warner, Norcross & Judd, Grand Rapids, Mich., for Michigan Express, Inc.; J. M. Neath, Jr., Grand Rapids, Mich., of counsel.

## OPINION

FOX, District Judge.

The plaintiff in this case is the subrogee of International Selling Corporation, a vendee of European steel. The steel was shipped to New Orleans by defendant M. V. Bulk Enterprise. Then the steel was taken to Chicago on a barge of defendant American Commercial Barge Lines Co. Finally defendant Michigan Express, Inc. trucked the steel from Chicago to Grand Rapids. By the time the steel reached Grand Rapids, it had

become rusted. This suit was brought for the damages caused by the rust.

Defendant American Commercial Barge Lines Co. is the only defendant challenging the jurisdiction of this court.

The defendant is a Delaware corporation. This defendant is not alleged to be doing business in the State of Michigan, to have any agent in the State of Michigan for the service of process, or to have any contacts, ties, or relations whatsoever with the State of Michigan. The contract to carry this particular load of steel is not alleged to have been made in Michigan. Basically, the plaintiff alleges that this defendant knew this shipment was on its way to Michigan and that this steel became rusted while on the defendant's barge.

█ The defendant was served by a United States Marshal in Illinois. No claim of lack of notice is made. The defendant's contention is that such service is not authorized by the Federal Rules of Civil Procedure, Rule 4(f), or by any statute of the United States or of the State of Michigan.

Rule 4(d) (7) of the Federal Rules provides that service made in accordance with state law is valid. M.S.A. § 27A.1920 [M.C.L.A. § 600.1920] permits service upon any corporation, whether domestic or foreign, when made by "(1) leaving a summons and copy of the complaint with any officer or the resident agent, * * *." This particular requirement seems to have been carried out. The defendant, however, is really raising two other questions. First, whether any Michigan statute permits a court to take jurisdiction of this corporation in this situation. And if so, is that a constitutional exercise of state power.

M.S.A. § 27A.715(2) [M.C.L.A. § 600.‑715(2)] grants limited personal jurisdiction over a corporation which has caused consequences to occur in Michigan resulting in an action for tort.

"Sec. 715. The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficent basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) *The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort."* (Emphasis supplied.)

This section was meant to provide jurisdiction over corporations which take part in certain conduct in another state that have tortious consequences in Michigan.

Professor Hawkins discussed this section in Michigan Complied Laws Annotated, Practice Commentary, § 600.715.

"RJA § 715(2) authorizes the exercise of personal jurisdiction over corporate defendants on the basis of "the doing or causing any act to be done, or consequences to occur in the state resulting in an action for tort." The genesis of this idea can be found in non-resident motorist statutes, which have been upheld as a basis for jurisdiction. Hess v. Pawloski (1927) 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091. Contemporary thinking has it that this jurisdiction is based upon the state's interest in the events and injury within its borders, rather than upon some specially limited power to regulate motor vehicles, so that such jurisdiction may logically be extended to other tortious acts causing injury within the state.

"It should be noted that the Michigan statute predicates jurisdiction not only on acts done or caused to be done within the state, but also on "causing * * * consequences to occur" in the state. Interpreted literally, this means that a non-resident defendant who causes injury to occur within Michigan may be subjected to Michigan

jurisdiction even though he has never been within the state or himself done any act physically within the state."

The complaint alleges that the defendant's negligent conduct caused tortious results in Michigan. In light of Dornbos v. Kroger Co., 9 Mich.App. 515, 157 N.W.2d 498 (1968), the facts alleged here seem to fit within the requirements of M.S.A. § 27A.715(2). The facts which that court considered most relevant were first stated:

"Defendants - appellants on leave granted by this Court appeal an order of the Ottawa circuit court denying their motion to dismiss plaintiffs' complaint for lack of jurisdiction.

"Plaintiffs are residents of Ottawa county, Michigan, doing business in the city of Grand Haven as H. J. Dornbos & Bros., a copartnership.

"Defendant Adkins Transfer Company is a corporation organized under the laws of the state of Indiana and is a common carrier in interstate and intrastate commerce with terminals in Chicago, Illinois, and Nashville, Tennessee. Defendant Adkins Cargo Express is a corporation organized under the laws of the state of Indiana and is a successor to the Adkins Transfer Company. Defendant Tennessee Cartage Company is a corporation organized and existing under the laws of the state of Tennessee and is a common carrier in the state of Tennessee.

"Plaintiffs alleged in their complaint that in September, 1963, plaintiffs were engaged in the business of processing and selling fish products. They received an order from the Kroger Company from its Nashville, Tennessee office for smoked fish, f. o. b. Grand Haven. The fish were sealed in vacuum packages marked, "Keep under refrigeration." On September 19, 1963, the fish were picked up by Rooks and transferred to Adkins at Chicago, Illinois, which, in turn, transported the fish to Nashville, Tennessee.

In Nashville the fish were turned over to Tennessee Cartage which delivered the fish to the Kroger warehouse on September 25, 1963.

"Plaintiffs further alleged that due to negligence in the handling of the product the fish became contaminated and caused death when eaten, with consequential adverse publicity for plaintiffs and the resulting damages for which the action was brought in Ottawa county, Michigan.

"Defendant Adkins Transfer Company, Adkins Cargo Express and Tennessee Cartage Company moved the circuit court to quash service of process and dismiss the complaint for lack of jurisdiction, as the moving parties were served with process in the state of Tennessee. The motions challenged the application and the constitutionality of Michigan's "long arm" statute, the revised judicature act, P.A.1961, No. 236, § 715, C.L.S.1961 § 600.715 (Stat.Ann.1962 Rev. § 27A.715). The circuit judge denied the motion to dismiss the complaint."

Then the court concluded:

"This court is unable to see any difference in this situation from the case of Gray v. American Radiator & Standard Sanitary Corporation (1961), 22 Ill.2d 432, 176 N.E.2d 761. In *Gray* we have a negligently manufactured component which reaches the state of Illinois, while in the case before this court we have the claim of a negligently performed service with tortious consequences in either event."

█ Similarly, this plaintiff alleges that negligently performed services by this defendant have produced tortuous consequences in Michigan. Thus, M.S.A. § 27A.715(2) permits a court to take jurisdiction over this defendant.

The remaining question is whether this exercise of power by the Michigan statute is constitutional. The Dornbos Court also answered this question.

"The defendants claim the circuit court erred in that its decision:

1) violated the due process law requirement of the 14th amendment of the United States Constitution;

2) places an undue burden on interstate commerce.

"C.L.S.1961, § 600.715 (Stat.Ann. 1962 Rev. § 27A.715) provides as follows:

" 'The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships: * *

" '(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.'

■ "The trial judge in a written opinion which we adopt stated in part:

" 'Note must be taken that this section of the judicature act is carefully circumscribed and limited to acts outside the state which have consequences inside the state. Former restricted concepts of jurisdiction over nonresident foreign corporations have been expanded by the case of International Shoe Company v. State of Washington (1945), 326 U.S. 310, 316, 319 (66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057) where it was stated:

" 'Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. * * * But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." * * *

" 'It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or little less. * * * Whether due process is satisfied must depend rather upon the *quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure.* That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations.' (Emphasis supplied by circuit judge.)

" 'The court directs its attention to the 'quality and nature' of the activity of these defendants as it relates to the state of Michigan. These defendants are in the business of carrying goods in interstate commerce. It is reasonable to assume that they solicit and hopefully anticipate such business. They are in the position of being able to protect themselves from the consequences of their own derelictions. They understand that the nature of their business requires them to have the care and custody of the products and possession of residents of other states.

It is foreseeable that their negligent handling of these products and possessions may have tortious consequences in other states.

" 'It is no defense to claim that these defendants did not come into the state of Michigan to solicit this business when the very nature of their business and their franchise is such that they are required to carry goods solicited by others with whom they have a business relationship and who have a direct relationship with the forum state. Without delving into the agency concepts that may be present here, suffice it to state that the very nature of the business of these defendants creates the necessary minimum contacts with those states which produce the products that enter interstate commerce. * * *

" 'The court's thinking is guided by McGee v. International Life Insurance Company (1957), 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 wherein it is stated:

" 'In a continuing process of evolution this Court accepted and then abandoned "consent", "doing business", and "presence" as the standard for measuring the extent of state judicial power over such corporations.'

" 'The court rejects any argument that such a result will be an undue burden on interstate commerce or will offend, 'traditional notions of fair play and substantial justice'. The realities of modern commercial transactions dictate that modern concepts of jurisdiction be considered for the purpose of enlightened handling of disputes arising from modern conditions and transactions. Shall we hold that there can only be fair play and substantial justice where the law provides that all those who do business with these defendants must go to those states wherein they are doing business for adjudication of their grievances rather than to hold that the forum of justice may be that state where tortious consequences occur? To ask the question is to answer it. The court finds nothing offensive to the concept of fair play and justice in holding that the claimant may resort to the forum where the consequences of an act occur.'

■■ "This Court is aware of the decision by our Supreme Court in Hershel Radio Co. v. Pennsylvania R. Co. (1952), 334 Mich. 148, 54 N.W.2d 286. However, that case was decided prior to the revised judicature act. To follow that holding in the present case this Court would have to declare this section of the act invalid as to interstate carriers. This we decline to do. Statutes are presumed to be constitutional."

Since the facts in the Dornbos case are almost identical to those in this suit, that court's opinion could be relied upon to uphold the constitutional application of this Michigan statute to the facts in this case. This case was denied appeal by the Michigan Supreme Court, 381 Mich. 772 (1968). The Sixth Circuit has recently cited this case approvingly, Nationwide Motorist Ass'n of Michigan v. Freeman, 405 F.2d 699, 700 (6 Cir., 1969), lending weight to the Dornbos opinion's precedential value.

However, the most persuasive reason for following the Dornbos decision is its logic. That court's opinion exhibits keen awareness of the need to readjust "traditional notions of fair play and substantial justice," to the realities of modern commercial conditions. In light of the commercial setting of this transaction, the nature of the defendant's overall activities, its ability to protect itself from the effects of its own negligence, and the foreseeable possibility that its negligence will have tortious consequences in other states, it does not seem offensive to the concept of fair play and justice to permit this plaintiff to bring this suit in the forum where the consequences of the defendant's acts occur.