## VENCEDOR MANUFACTURING CO., INC., Plaintiff-Appellant,

v.

## GOUGLER INDUSTRIES, INC., et al., Defendants, Appellees.

### No. 76–1459.

United States Court of Appeals, First Circuit.

Heard Feb. 15, 1977.

Decided June 20, 1977.

Horacio R. Subira, Santurce, P.R., with whom Ralph J. Rexach and Quetglas, Vazquez & Subira, San Juan, P.R., were on brief, for plaintiff-appellant.

John F. Malley, Santurce, P.R., with whom Jaime A. Garcia Blanco, Santurce, P.R., was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, VAN OOS-TERHOUT * and INGRAHAM **, Circuit Judges.

COFFIN, Chief Judge.

Plaintiff, Vencedor Manufacturing Company (Vencedor), brought this contract action in Puerto Rico. Defendant, Gougler Industries, Inc. (Gougler),[1] moved to dismiss for lack of personal jurisdiction, arguing that its contacts with Puerto Rico were insufficient to permit a Puerto Rican court to hear the lawsuit. The district court agreed and dismissed the suit. This appeal followed.

The plaintiff uses extruders to make asbestos-cement pipe. In 1964, Vencedor's corporate predecessor purchased an extruder from the Chambers Brothers Co. For a few years, Chambers Brothers supplied spare parts for this machine to Vencedor. In 1967, the defendant, an Ohio corporation, purchased the inventory and patterns of Chambers Brothers and began to do business with Vencedor. Over the next five years, Gougler filled more than a dozen of Vencedor's orders for spare parts. In all, Vencedor bought about $5,000 worth of parts from Gougler, and in 1969 Vencedor ordered an extruder from Gougler at a cost of more than $27,000. The purchase order reveals that the extruder was not a "stock" item; Gougler was to duplicate the Chambers Brothers' extruder but make several specified modifications. Gougler allowed Vencedor credit on all purchases; the terms were net cash 30 days. Although all sales were f. o. b. Ohio, Vencedor frequently (if not always) filed with the United States Department of Commerce a shipper's ex-

---

* Of the Eighth Circuit, sitting by designation.

** Of the Fifth Circuit, sitting by designation.

1. Gougler has several subsidiaries that are also joined in this suit. We shall refer to them all as Gougler.

port declaration, specifying Puerto Rico as the destination. The present suit arose from one of Vencedor's orders. The complaint alleges that Vencedor requested nickel alloy augers for one of its extruders; that Gougler supplied chrome alloy augers without pointing out the substitution; and that the substituted augers failed, causing substantial damage.

In addition to its dealings with Vencedor, Gougler made sales on credit to five other Puerto Rican firms. Two of the firms bought extruders costing more than $20,000 each. In all, Gougler did about ninety thousand dollars worth of business with Puerto Rican customers between 1967 and 1973. This represented less than .5 percent of Gougler's total sales volume in those years. Gougler sent no salesmen to Puerto Rico; customers ordered spare parts from catalogues or manuals supplied by Gougler with its extruders. Gougler does not maintain an office in Puerto Rico, and it does not send technicians there. On one occasion, however, a representative of the firm did pay courtesy calls on some Puerto Rican customers while he was in the Commonwealth on vacation.

 Puerto Rico's "long-arm" rule permits the exercise of jurisdiction to the full extent of constitutional authority. *See Arthur H. Thomas Co. v. Superior Court*, 98 P.R.R. 864, 870–71 n. 5 (1970); *Ramon Vela, Inc. v. Sagner, Inc.*, 382 F.Supp. 478 (D.P.R. 1974); 32 P.R.Laws Ann., App. II, R. 4.7. The limits of this constitutional authority are ultimately set by "our traditional conception of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945). Before *International Shoe*, jurisdiction over a corporate defendant depended on such abstract formulas as whether the corporation was "present" or "doing business" in the forum state. *International Shoe* focused judicial attention on a more concrete question—whether the corporation's contacts with the forum made it reasonable to require the corporation to defend against a suit there. *Id.* at 317, 66 S.Ct. at 154. Although *International Shoe* was a

conceptual breakthrough, in that case the Court did not try to do more than sketch the sorts of contacts it had in mind. It did draw one distinction of importance to this case. When a cause of action arises from the defendant's contacts with the forum, less is required to support jurisdiction than when the cause of action is unrelated to those contacts. *Id.* In this case, one of Gougler's contacts with Puerto Rico is its sale of the disputed augers to Vencedor. Gougler's other sales to Vencedor, and its sales of parts and extruders to other Puerto Rican companies, are also "related" to the present cause of action.

In deciding whether these contacts are enough to justify the exercise of jurisdiction, we are guided by two Supreme Court cases that have applied *International Shoe* to the problem of claim-related contacts. In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the plaintiff sued a Texas life insurance company in California. The company's ties to California were slender. The policyholder had first bought his policy from an Arizona company whose obligations were later assumed by the Texas company. When the change took place, the Texas company mailed a reinsurance certificate to the policyholder in California. The policyholder accepted the offer to reinsure him on the same terms as his old policy, and he continued to mail premiums from California until he died there. Aside from this transaction, so far as the record showed, the Texas company had never solicited or done any business in California. Nevertheless, Justice Black's opinion for a unanimous Court held that jurisdiction could be obtained in California because the insurance contract "had substantial connection with that State". *Id.* at 223, 78 S.Ct. at 201. In addition, the Court pointed to California's interest in giving its residents a remedy against foreign insurance companies. Policyholders, the Court noted, would be severely disadvantaged if they could only sue in some distant state.

The limits of *McGee* were clarified later in the same term. In *Hanson v. Denckla*,

357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283 (1958), the Court refused to interpret past cases as signaling "the eventual demise of all restrictions on the personal jurisdiction of state courts." *Hanson* dealt with a trust established in Delaware by a settlor who later moved to Florida. In that state, the settlor performed various small acts of trust administration; eventually she died there. The question was whether these facts permitted a suit against the trustee in Florida. The Court distinguished *McGee*. The crucial difference between the two cases, the Court held, was that the insurance company in *McGee* had sent a solicitation to the policyholder in California, while the trustee in *Hanson* had taken no such voluntary step into Florida. The Court also suggested that the special status of insurance in state law had justified a sweeping assertion of jurisdiction over foreign companies in *McGee*. The critical inquiry, apparently, is whether there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.*, at 253, 78 S.Ct. at 1240.

■■■ There is no doubt that *Hanson* reduces the potential sweep of *McGee*, but it is not easy to find the boundary that *Hanson* draws. One negative principle emerges. The interest analysis that is often applied to choice of law problems will not always supply answers to this jurisdictional question. Puerto Rico has an unquestionable interest in protecting its residents from breached contracts and mislabeled goods, but that interest does not by itself confer jurisdiction over this dispute on Puerto Rico's courts. In *Hanson*, the plaintiffs were Florida residents, and Florida courts had an interest in applying their law to the suit, but the Court expressly separated choice of law from jurisdictional rules, holding that jurisdiction could not be asserted over the Delaware trustee. *Id.* at 253–54, 78 S.Ct. 1228.

The verbal formula used by the *Hanson* Court to justify its holding is not easy to apply. It is hard to say when a corporation has "purposefully" availed itself of "the privilege of conducting activities within the forum State", or when it has invoked "the benefits and protections" of a state's laws. *International Shoe* stands as a warning that conclusory labels such as "presence" or "purposefully availing" should not replace a practical concern for the facts of each case. *Hanson's* language suggests that some sort of voluntary association with the forum is a jurisdictional prerequisite. Further elaboration of *Hanson's* formula should depend on a case-by-case analysis of contacts rather than a parsing of the Court's language.

■■■ The *Hanson* Court made mention of two facts that distinguished *McGee*. The insurance company in *McGee* had written a soliciting letter to the insured while he was living in California, and the insured had accepted the company's offer there. We do not put much faith in the second element. When contracts are made by mail, the place of making may be difficult to pin down. The intricacies of offer, counteroffer, and invitation to make an offer are irrelevant to the central concern for fairness that should illuminate this area of the law. *See* D. Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois*, 1963 U.Ill.L.F. 533, 572–73. Thus we give no weight to the fact that Vencedor's orders were accepted, and the contracts made, in Ohio. Similarly, it makes no difference that Gougler's shipments were f. o. b. Ohio. The effect of this designation was to shift to Vencedor the cost of shipping and the risk of loss in transit. Other courts have also refused to rely either on the "place of making" or the f. o. b. designation when analyzing jurisdiction in mail order cases. In *Kornfuehrer v. Philadelphia Bindery, Inc.*, 240 F.Supp. 157 (D.Minn.1965), for example, the court upheld jurisdiction in Minnesota over a Pennsylvania defendant. The Minnesota plaintiff had ordered 7500 binders by mail, and the seller accepted the order in Pennsylvania. The binders were shipped f. o. b. Philadelphia. The defendant's only contacts with Minnesota were that it "had entered a contract with a Minnesota resident to sup-

ply the resident with its product in the normal course of its profit making activities". *Id.* at 162. That was enough. The court said that reliance on the place of making would be "excessively technical", *id.* n. 12, and that "the shipping terms should be irrelevant on the issue of whether sufficient minimum contacts . . . allow Minnesota to exercise jurisdiction". *Id.* at 160 n. 4. We agree. Gougler's mode of shipping goods and accepting orders is apparently designed to support the company's claim that it does business in all fifty states, but is subject to suit only in Ohio. If *International Shoe* stands for anything, however, it is that a truly interstate business may not shield itself from suit by a careful but formalistic structuring of its business dealings.

The second fact distinguishing *Hanson* from *McGee* was the *McGee* defendant's solicitation of business in the forum state. After *McGee* it seems fair to say that one who solicits in a state may be sued there if the transaction he has sought goes sour. Some courts have carried the concept of solicitation quite far. In *Hardy v. Pioneer Parachute Co., Inc.*, 531 F.2d 193 (4th Cir. 1976), one defendant had run ads in two national magazines and had made 42 sales to customers in South Carolina. These contacts were enough to support jurisdiction. A second defendant making even fewer sales to South Carolina residents was also found amenable to suit; it had contributed to the first defendant's advertising budget and thus, indirectly, to the national ads.

Gougler, so far as the record shows, does not advertise in Puerto Rico. Its sales are apparently generated by word of mouth and by the catalogues that accompany its extruders. Solicitation is not, however, limited to advertising. It is the affirmative seeking of business. Sending catalogues to a jurisdiction is a way of seeking business, and in Gougler's case it has been an effective way. Indeed, the decision to send catalogues to customers in Puerto Rico is a more "purposeful" step into that jurisdiction than the decision to run an ad in a national magazine. Those who buy space in national media are unlikely to do so with the Puerto Rican market in mind. They may even be a bit surprised to find that their ads have a significant circulation there. Gougler's distribution of catalogues to its Puerto Rican customers suffers from no such ambiguity.

▮ Even if the catalogues are not so characterized, nothing in *Hanson* makes the absence of solicitation fatal to an assertion of jurisdiction over the corporation. If a construction firm gets an unsolicited order from the resident of another state, the firm may not go to the state, build a bad house, and leave, all without fear of being sued in that state. In *Shealy v. Challenger Manufacturing Co.*, 304 F.2d 102 (4th Cir. 1962), Judge Haynsworth, in discussing whether "solicitation [is] a *sine qua non* of jurisdictional power", put it this way:

"If the defendant, like the maker of the better mousetrap, is fortunate enough to get the business without active solicitation, it does not gain immunity from an exercise of jurisdiction by those states in which it engages in substantial activity of a different sort. A foreign corporation, busily present in a state effecting direct deliveries of its wares to its customers, cannot escape the jurisdiction of the state upon the ground its orders were unsolicited. A seller's distribution of his wares may be a substantial activity whether the precedent contracts were solicited by the buyers or by the seller." *Id.* at 104 [footnote omitted].

*See also J. Henrijean & Sons v. M. V. Bulk Enterprise*, 311 F.Supp. 417, 421 (W.D.Mich. 1970). If solicitation is not the sole touchstone for personal jurisdiction, we must nonetheless give content to the requirement expressed in *Hanson*: that the defendant's contacts with the forum be voluntary in some meaningful sense. Solicitation meets that standard; we think the standard is also met when a manufacturer sends his products directly into the forum, at least when he does so with some regularity. He knows that flaws in his work will have consequences in the forum, and it is within his power to refuse to deal with customers

there. Some courts have held that the "purposeful availing" test is satisfied whenever the manufacturer could reasonably foresee that his product would reach the forum state. *King v. Hailey Chevrolet Co.*, 462 F.2d 63, 67 n. 4 (6th Cir. 1972). The Second Circuit has used a similar test in interpreting a sweeping long-arm statute:

> "The act by a foreign corporation which will subject it to Vermont's jurisdiction . . . must be one which the foreign corporation could know to have potential consequences in Vermont. Otherwise the statute could not be rationalized on the ground that the foreign corporation's subjection to Vermont laws is, in effect, its own doing. This interpretation of the statute would seem to insure its use only in cases where the minimum contacts required by Hanson and McGee are present." *Deveny v. Rheem Manufacturing Co.*, 319 F.2d 124, 128 (2d Cir. 1963).

And in *J. Henrijean & Sons v. M. V. Bulk Enterprise, supra*, 311 F.Supp. at 417, the court applied a similar test to a defendant with no immediate contacts with the forum state. The defendant had transported steel by barge from New Orleans to Chicago, knowing that the steel was ultimately bound for Michigan. The steel rusted on the way. The court held that the defendant's knowledge of the steel's destination would support jurisdiction in Michigan.

■ Gougler's acts fall within this standard. Gougler shipped its products directly to Puerto Rican customers, not to middlemen. The ultimate destination of each spare part or extruder was clear. On at least some occasions, Gougler had the destination especially impressed upon it by the need for an export declaration. Indeed, Gougler's acts might meet a stricter test. By extending credit to its Puerto Rican customers, Gougler was to some extent counting on the benefits of Puerto Rican law. If Vencedor had not paid its bill, Gougler could have sued in Puerto Rico, either on the contract or to enforce a judgment obtained in Ohio. The primary benefit that any nonresident corporation seeks

from the law of a foreign state is enforcement of the contracts it has made with that state's residents.

■ Gougler points out that Puerto Rican sales account for less than .5 percent of its total sales volume. So long as its sales there are part of a regular course of dealing, and are not isolated or exceptional events, we do not think relative sales volume is relevant. A large corporation like General Motors could do an enormous trade with Puerto Rican consumers and still make the claim that Gougler advances here. In *Bullard v. Rhodes Pharmacal Co.*, 263 F.Supp. 79 (D.Mont.1967), the court was faced with a similar argument. The defendant's contacts with Montana were slight, for it sent its goods by common carrier from Illinois to outlying distributors. The defendant accepted the distributors' orders in Illinois, and it did no more than .5 percent of its business with Montana residents. The court observed:

> "It is true that in terms of percentage of its total sales, defendant's contacts with Montana were slight. It is however fairly inferable that these contacts were limited only by the lack of demand in Montana for defendant's products. It is fairly inferable that defendant's intention to do business in Montana was a general intention, and that to the extent there was a demand defendant intended to sell in Montana. Given this state of mind which defendant was free to alter, had defendant felt that the products liability climate of the state or its long arm statute would be burdensome to it, is it unfair to treat as the required 'minimum contacts' this intention plus the fact of the sales? This approach is suggested by the *International Shoe* case, supra, which rejects quantity of sales as a measuring rod. It also satisfies the 'purposeful act' requirement of *Hanson v. Denckla*, supra. Certainly a defendant should not be subjected to the jurisdiction of a distant state by accident, but when from the general pattern of its business it may be said that it contemplated a general products distribution in a state it does not

seem unfair to require that it defend its products' liability cases arising in that state." *Id.* at 83 [footnotes omitted].

In *Mark v. Obear & Sons, Inc.*, 313 F.Supp. 373 (D.Mass.1970), the defendant's sole contacts with the forum were sales through a distributor and the mailing of catalogues on request. The defendant's sales in the forum were only .5 percent of its total annual sales, but jurisdiction was upheld. Indeed, other courts have gone further. Many say that a single shipment to the forum state will suffice. *See, e. g., Kornfuehrer v. Philadelphia Bindery, Inc., supra*, 240 F.Supp. at 157; *Aquarium Pharmaceuticals, Inc. v. Industrial Pressing and Packaging, Inc.*, 358 F.Supp. 441 (E.D.Pa. 1973). This may be going too far. We are mindful of the disturbing hypothetical posed by Judge Sobeloff in *Erlanger Mills v. Cohoes Fibre Mills*, 239 F.2d 502, 507 (4th Cir. 1956). He may well be right that a California dealer who sells tires to a tourist with Pennsylvania plates should not be required to defend a refund suit in Pennsylvania. Perhaps it is fair to impose the burden of distant litigation only on those who obtain significant benefits from frequent interstate transactions. *Cf. Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079 (1st Cir. 1973) (no jurisdiction when contact with forum state was a single order). In any event, we do not face that issue in this case, for Gougler's dealings with Puerto Rico are part of a continuous and systematic pattern of sales; its sale of the augers was hardly an isolated transaction.

Other factors also suggest that jurisdiction was proper. Trial convenience is not the ruling consideration in jurisdiction cases, *Hanson v. Denckla, supra*, 357 U.S. at 254, 78 S.Ct. at 1228, but it is always helpful to ask where the largest number of witnesses are likely to reside. *McGee v. International Life Insurance Co., supra*, 355 U.S. at 223, 78 S.Ct. at 199. Disputes over the meaning and existence of a contract in this case will require testimony from both sides; it will be no more convenient for the Puerto Ricans to come to Ohio than for the Ohioans to come to Puerto Rico. On the issue of damages, however, all witnesses are likely to be in Puerto Rico, and this makes Puerto Rico the favored forum. Second, in upholding the federal district court's jurisdiction over Gougler, we are not necessarily imposing a severe burden on that company. If trial in Puerto Rico is seriously inconvenient for Gougler, and if Ohio turns out to be the most logical forum, the suit may be transferred to a federal court in that state. *See* 28 U.S.C. § 1404. Finally, permitting suit against Gougler in a Puerto Rican court will not upset any contract-based expectations. Gougler could easily have insisted on a provision in the contract that any disputes would be resolved by Ohio courts. *See National Equip. Rental v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). Gougler apparently chose not to do so.

We anticipate a possible objection to our conclusion. Gougler may argue that we have relied too heavily on jurisdictional decisions in which the underlying cause of action sounded in tort. Some scholars have suggested that tort suits, especially products liability actions, can be maintained on the basis of more attenuated contacts than can contract actions. *See* Carrington and Martin, *Substantive Interests and the Jurisdiction of State Courts*, 66 Mich.L.Rev. 227, 232 (1967). Not all scholars share this view, however. *See* D. Currie, *The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois*, 1963 U.Ill.L.F. 533, 569–70. Some support for a "categorical" approach to jurisdiction—one that stretches jurisdictional constraints in certain classes of suits and shrinks them in others—may be found in *Hanson v. Denckla, supra*, 357 U.S. at 252, 78 S.Ct. 1228. There the Court distinguished *McGee* in part by pointing out California's "manifest interest" in providing a remedy against non-resident insurance companies. By its citations, the Court implied that this special state interest could also be found in securities and automobile tort cases. *Id.* at 253, 78 S.Ct. at 1228. Decisions by lower courts have also tended to show more sympathy for tort plaintiffs than contract plaintiffs in setting jurisdic-

tional limits. *E. g., compare Erlanger Mills v. Cohoes Fibre Mills, supra,* 239 F.2d at 502, *with Davis v. St. Paul-Mercury Indem. Co.,* 294 F.2d 641, 649 (4th Cir. 1961); *compare Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill.2d 432, 176 N.E.2d 761 (1961), *with Grobark v. Addo Machine Co.,* 16 Ill.2d 426, 158 N.E.2d 73 (1959); *but see Koplin v. Thomas, Haab & Botts,* 73 Ill.App.2d 242, 254, 219 N.E.2d 646, 652 (1969). *See generally* Comment, *In Personam Jurisdiction Over Nonresident Manufacturers in Product Liability Actions,* 63 Mich.L.Rev. 1028 (1965).

We see no rational or neutral principle that makes inapplicable the tort cases we have relied upon. A consumer whose lawnmower falls to pieces, gashing his foot, wants personal injury damages and the price of a new lawnmower. If the manufacturer is a non-resident, the consumer should not be permitted to seek damages at home while he is forced to litigate in a distant forum in order to get his lawnmower replaced. Similarly, it would be anomalous to hold in this case that Vencedor may not sue Gougler in Puerto Rico for its damages while acknowledging that Gougler could be sued there if the same flaw in its augers had injured one of Vencedor's workers. We cannot assume that every tort suit pits a poor plaintiff against a rich corporation, nor that contract actions are always between equals. To vary the minimum contacts needed for jurisdiction according to the character of the suit would lead plaintiffs into disingenuous manipulation of their pleadings, and it would plunge the courts into ever more difficult refinements of the categories. They would need to decide whether a contract action involving individuals should be treated like one between corporations; whether consumers' orders from mail order catalogues should be treated like commercial contracts; whether the tort of defamation or of interference with contract is to be treated like the negligent operation of an automobile. These questions will not be easily answered, and their difficulty persuades us not to strain in this case to base our jurisdictional decision on the fact that we are dealing with the

category of commercial contract actions. *Hanson* is sufficiently distinguished from *McGee* by the absence, in *Hanson,* of any solicitation or other voluntary contact with the forum. Gougler's contacts with Puerto Rico, in contrast, are far from passive. *McGee,* therefore, controls this case.

*Reversed.*