**MARKETING & DISTRIBUTION RESOURCES, INC.**

v.

**PACCAR, INC. d/b/a Peterbilt Motors Company.**

Civ. A. No. 74–2880–F.

United States District Court, D. Massachusetts.

Nov. 3, 1978.

Edward F. Perlman, David Wolf, Wolf, Greenfield & Sacks, Boston, Mass., for plaintiff.

Mitchel S. Ross, Hutchings & Wheeler, Boston, Mass., for defendant.

## MEMORANDUM

FREEDMAN, District Judge.

This is a diversity action for breach of contract and unfair trade practices. The matter is before the Court on the defendant's objection to the Magistrate's recommendation that its motion to dismiss for lack of jurisdiction over the person be denied. The Court has reviewed the matter *de novo* and now denies the motion.

The law of the forum state determines the amenability of a foreign corporation to suit in a federal court diversity action. *E. g., Caso v. Lafayette Radio Electronics Corporation*, 370 F.2d 707 (1st Cir. 1966); *Pulson v. American Rolling Mill Co.*, 170 F.2d 193 (1st Cir. 1948); *Walsh v. National Seating Co., Inc.*, 411 F.Supp. 564 (D.Mass.1976). The burden of establishing a court's jurisdiction over a particular defendant is on the plaintiff. *See, e. g., KVOS Inc. v. Associated Press*, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183 (1936); *Aro Manufacturing Co. v. Automobile Body Research Corporation*, 352 F.2d 400 (1st Cir. 1965), *cert. denied*, 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966); *Walsh v. National Seating Co., Inc., supra*; *Nichols Associates, Inc. v. Starr*, 341 N.E.2d 909 (Mass. App.1976).

For purposes of the instant motion, the following facts are not in substantial dispute. The plaintiff, Marketing and Distribution Resources, Inc. ("MDR"), is a Massachusetts corporation with its principal place of business in Waltham, Massachusetts. The defendant, Paccar, Inc. ("Paccar"), is a Delaware corporation with its principal place of business in Bellevue, Washington. Paccar manufactures and markets motor vehicles through two unincorporated divisions, the Kenworth Motor Truck Company ("Kenworth") and the Peterbilt Motors Company ("Peterbilt").

In early 1971, through an exchange of telephone calls and correspondence, MDR and Paccar entered into an agreement[1] pursuant to which MDR agreed to produce a sales training program consisting of sound recordings and written material for Paccar's Kenworth division. MDR produced 101 copies of the program during the summer of 1971. Pursuant to Paccar's instructions, MDR mailed or shipped these copies to Kenworth in Washington and to various independent distributors of Kenworth products throughout the United States, including one to the Framingham Truck Sales & Service Corp. ("Framingham Truck") in Framingham, Massachusetts. Paccar paid MDR $150 per copy of the program.

Paccar obtained an additional 25 copies of the Kenworth sales training program in

---

1. There were a total of 30 letters exchanged between Paccar and MDR during the period of negotiation and performance of their contract.

July of 1972. Neville Associates, Inc. ("Neville"),[2] a Massachusetts corporation having a principal place of business in Wellesley Hills, Massachusetts, produced the sound portion of these additional copies. Paccar itself produced the printed portion. Both portions were mailed to various independent distributors of Kenworth products.

In the fall of 1972, Neville and Paccar produced an adaptation of the Kenworth program for Paccar's Peterbilt division. Neville produced 75 copies of the sound portion of the Peterbilt program and Paccar produced an equal number of copies of the printed portion. Both portions were forwarded to Peterbilt which then mailed them to various independent distributors of Peterbilt products throughout the United States, including one in Massachusetts. Paccar paid Neville a total of $8,600 for those portions of the Kenworth and Peterbilt programs which Neville produced.

Paccar has contractual relations with two independent dealers in Massachusetts who order products from Paccar. These products are sold f. o. b. the factory. The dealers themselves service the products and Paccar exercises no control over dealer sales activities. A Paccar marketing representative whose territory includes a number of eastern states visits the dealer on occasion. There is a telephone directory listing for Kenworth trucks, sales and service at 855 Worcester Road, Framingham, Massachusetts. That listing, however, is for one of the independent dealers which carries Kenworth products.

Paccar has apparently never applied for, nor received, a "foreign corporation certificate of authority" to do business in Massachusetts and no Paccar officers or employees are residents of Massachusetts. Paccar has never owned any property in Massachusetts and has never been required to pay any Massachusetts tax. Paccar has never maintained any office, bank account or mailing address in Massachusetts and has never placed advertising in any publication printed in Massachusetts.

Claiming that its agreement with Paccar was an exclusive requirements contract, MDR brought this action. The complaint purports to set forth claims for breach of contract and for unfair competition on the theory that MDR has copyrights to the material in the Kenworth program.

Paccar was served with process by mail at its offices in Washington under the Massachusetts long-arm statute, Mass.Gen. Laws ch. 223A. Service was also made under Mass.Gen.Laws ch. 181, § 15 which permits substituted service upon the Secretary of the Commonwealth of Massachusetts in the case of a foreign corporation "doing business" in Massachusetts.[3] Finally, Framingham Truck and Neville were served on the theory that they were Paccar's agents.

The central issue raised by the parties' briefs is whether, on these facts, the assertion of jurisdiction over Paccar under § 3(a) of the Massachusetts long-arm statute,[4]

2. Paccar's answers to MDR's interrogatories reveal that Paccar's contact at MDR was one Richard Neville. Mr. Neville apparently left MDR to form Neville Associates, Inc. As was the case with MDR, Paccar and Neville Associates, Inc. exchanged a series of telephone calls and correspondence.

3. See also, Mass.Gen.Laws ch. 223, § 38.

4. The Massachusetts long-arm statute, Mass. Gen.Laws ch. 223A, § 3 provides:
§ 3. Transactions or conduct for personal jurisdiction
  A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

(a) transacting any business in this commonwealth;
  (b) contracting to supply services or things in this commonwealth;
  (c) causing tortious injury by an act or omission in this commonwealth;
  (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth;
  (e) having an interest in, using or possessing real property in this commonwealth; or
  (f) contracting to insure any person, property or risk located within this commonwealth at the time of contracting; or

which section gives the Massachusetts courts jurisdiction over the person of non-residents as to claims arising from their "transacting any business in this commonwealth," is consistent with the Constitutional requiremenus of due process.[5] *See Whittaker Corporation v. United Aircraft Corporation,* 482 F.2d 1079 at 1082–1083 (1st Cir. 1973).

The requirements of due process in the context of the assertion of personal jurisdiction over a nonresident defendant have been the subject of Supreme Court discussion. *E. g., Kulko v. Superior Court,* 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner,* 433 U.S. 186 at 201–212, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla,* 357 U.S. 235 at 250–255, 78 S.Ct. 1228, 2 L.Ed.2d 1283 *reh. denied,* 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92 (1958); *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A nonresident defendant may be sued in a forum if it has "certain minimum contacts" with the forum such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington, supra* at 316, 66 S.Ct. at 158. There must have been "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla, supra,* 357 U.S. at 253, 78 S.Ct. at 1240.

Perhaps the clearest recent statement of the due process requirement involved in the assertion of personal jurisdiction over a nonresident defendant was given by the Court of Appeals for the First Circuit in *Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.,* 557 F.2d 886 (1st Cir. 1977) (applying Puerto Rico's long-arm rule). The First Circuit approvingly discussed the need for an act which the nonresident knew or could know might have consequences in the forum. *Id.* at 892. Chief Judge Coffin said:

> The verbal formula used by the *Hanson* Court to justify its holding is not easy to apply. It is hard to say when a corporation has "purposefully" availed itself of "the privilege of conducting activities within the forum State," or when it has invoked "the benefits and protections" of a state's laws. *International Shoe* stands as a warning that conclusory labels such as "presence" or "purposefully availing" should not replace a practical concern for the facts of each case. *Hanson's* language suggests that some sort of voluntary association with the forum is a jurisdictional prerequisite. Further elaboration of *Hanson's* formula should depend on a case-by-case analysis of contacts rather than a parsing of the Court's language.

*Id.* at 890.

Illustrative of the applicability of § 3(a) of the Massachusetts long-arm statute to cases like the one at bar is *Whittaker Corporation v. United Aircraft Corporation, su-*

---

(g) living as one of the parties to a duly and legally executed marriage contract, with the marital domicile of both parties having been within the commonwealth for at least one year within the two years immediately preceding the commencement of the action, notwithstanding the subsequent departure of the defendant in said action from the commonwealth, said action being valid as to all obligations or modifications of alimony, custody, child support or property settlement orders relating to said marriage or former marriage, if the plaintiff continues to reside within the commonwealth.

**5.** In *"Automatic" Sprinkler Corporation v. Seneca Foods Corporation,* 361 Mass. 441, 280 N.E.2d 423 (1972), the Supreme Judicial Court

of Massachusetts stated that the long-arm statute is "an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." *Id.* at 424, 280 N.E.2d at 424. Since the *"Automatic" Sprinkler* decision focused on § 3(a) of the long-arm statute, its application to the other subsections of ch. 223A, § 3 has been questioned. *See Walsh v. National Seating Co., supra* at 568 n. 1. The recent case of *Droukas v. Divers Training Academy, Inc.,* 376 N.E.2d 548 (Mass. 1978), however, suggests that the Supreme Judicial Court views *"Automatic" Sprinkler* as applicable to the other subsections of ch. 223A, § 3. *See id.,* 376 N.E.2d at 550–551, 554.

*pra,*[6] on which both of the parties to the instant litigation rely. The facts of *Whittaker* may be summarized as follows. In the course of performing a government contract for the manufacture of certain jet aircraft engines, United Aircraft Corporation ("United"), a foreign corporation, ordered a sample unit of metal alloy from Whittaker Corporation's ("Whittaker") Massachusetts production facility. Thereafter, Whittaker provided United with a number of additional test units. United employees contacted Whittaker by telephone, teletype and mail and made four visits to Massachusetts during the test period. Upon completion of the tests, United required Whittaker to agree to make no changes in the manufacturing process of the alloy and to keep secret certain details of the work performed. United then notified participating subcontractors that they could use Whittaker as a source of the alloy. Gulf and Western International Products Company ("Gulf") and Ladish Company ("Ladish"), both foreign corporations, then placed orders for the alloy with Whittaker. In spite of the fact that United found a weakness in a unit of the alloy, a United employee visiting Whittaker's Massachusetts facility urged Whittaker to proceed with its work on the Ladish and Gulf orders. Whittaker did. United, Gulf and Ladish rejected the alloy.

Whittaker sued all three defendants for breach of contract, adding a claim against United for deceit. The district court dismissed the action for lack of jurisdiction over the person of all three defendants. The Court of Appeals for the First Circuit affirmed the dismissal as to Ladish and Gulf but reversed as to United. The Court of Appeals reasoned that Ladish and Gulf were merely passive purchasers[7] of Whittaker's goods and cautioned that the "interest of the forum in not discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts" weighs against a finding of personal jurisdiction over a foreign corporation which merely orders goods from a resident of the forum. *Id.* at 1085. United, on the other hand, had engaged in activities rising above those "of a purchaser who simply places *an order* and sits by until the goods are delivered." *Id.* at 1084 (emphasis added).

While not as substantial as those of United, Paccar's contacts with Massachusetts from which MDR's causes of action arise were qualitatively different from those of mere passive purchasers of goods like Gulf or Ladish. *Compare Whittaker Corporation, supra,* with *Droukas v. Divers Training Academy, supra* and *"Automatic" Sprinkler Corporation v. Seneca Foods Corporation, supra.* Paccar entered into contracts with two Massachusetts companies for the production of sales trainers. In both instances the parties contemplated that the contracts would be performed (i. e., the sales trainers would be manufactured) in Massachusetts. Paccar also directed MDR to mail certain of the sales trainers from Massachusetts directly to Paccar's independent distributors. Throughout the period of negotiation and performance, Paccar, MDR and Neville exchanged telephone calls and correspondence relating to the contracts.

The facts of *Colony Press, Inc. v. Fleeman,* 17 Ill.App.3d 14, 308 N.E.2d 78 (1st Dist.1974), are strikingly analogous to those at bar.[8] The plaintiff, an Illinois printer,

---

6. Other cases applying § 3(a) of the Massachusetts long-arm statute include: *Droukas v. Divers Training Academy, Inc.,* 376 N.E.2d 548 (Mass.1978); *Nichols Associates, Inc. v. Starr, supra; Walsh v. National Seating Co., Inc., supra; Murphy v. Erwin-Wasey, Inc.,* 460 F.2d 661 at 665 (1st Cir. 1972); *Singer, PPA v. Piaggio & C. (s.p.a.),* 420 F.2d 679 (1st Cir. 1970); *Salter v. Lawn,* 294 F.Supp. 882 (D.Mass.1968).

7. The First Circuit in *Vencedor, supra,* did not face the issue of the continuing validity of the single or passive purchaser rule. *Vencedor Mfg. Co., Inc. v. Gougler Industries, supra* at 893.

8. While not controlling, cases in other jurisdictions with comparable long-arm provisions are an appropriate source of guidance on issues not yet decided by the courts in Massachusetts. *Cf. Droukas v. Divers Training Academy, supra*

received a call from the Ohio defendant regarding the printing of advertisements in the form of newspaper inserts to appear in an Ohio newspaper. The defendant ordered a number of inserts. Plaintiff then prepared and mailed a sample copy to the defendant who thereupon corrected it and returned it to the plaintiff with instructions to proceed. After the printing was done in Illinois, the plaintiff, at defendant's direction, shipped the inserts f. o. b. Chicago directly to the Ohio newspaper. The inserts were neither paid for nor returned and the plaintiff sued.

The Appellate Court of Illinois, First District, reversed the trial court's order quashing the service of summons. The Appellate Court held that the Ohio defendant was amenable to suit in Illinois under the "transacting any business" clause of that state's long-arm statute. See Ill.Rev.Stat., ch. 110, ¶ 17(1)(a). Relying on the acceptance of the contract and its performance in Illinois, the exchange of the sample copy and the fact that the defendant instructed the plaintiff to ship the inserts, f. o. b. Chicago, directly to the Ohio newspaper, the court concluded that the "defendant should have known that he might be liable to suit in Illinois if the bill were not paid." Id., 17 Ill.App.3d at 18, 308 N.E.2d at 80.

■ Similarly, Paccar, by "purposefully avail[ing] itself of the privilege of conducting activities" within Massachusetts, should have known that it might be subject to suit in Massachusetts for claims arising from those activities. Moreover, Paccar could have sued MDR in Massachusetts if MDR had failed to perform under the contract. "The primary benefit that any nonresident corporation seeks from the law of a foreign state is enforcement of the contracts it has made with that state's residents." *Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.,* supra at 892. Not only did Paccar negotiate with MDR through telephone calls and correspondence, but Paccar directed MDR to mail the Kenworth sales training programs from Massachusetts directly to distributors of Kenworth products. Paccar then transacted similar business with Neville.[9] The contract with MDR was therefore performed (by MDR's production of the Kenworth sales training program) and, according to MDR, breached (by Paccar's dealings with Neville) in Massachusetts. I therefore hold that Paccar's dealings in Massachusetts with respect to the production of the Kenworth and Peterbilt sales training programs were "voluntary in some meaningful sense," *Vencedor Manufacturing Co., Inc. v. Gougler Industries,* supra at 891. Paccar is therefore amenable to suit in this Court under § 3(a) of the Massachusetts long-arm statute.

Because I find jurisdiction over Paccar under § 3(a) of the long-arm statute, it is unnecessary to consider MDR's contentions that Paccar is subject to suit under § 3(b), § 3(c)[10] and § 3(d) of the long-arm statute and Mass.Gen.Laws ch. 181, § 15.

For the foregoing reasons, Paccar's motion to dismiss for lack of jurisdiction over the person is denied. An appropriate order will issue.

(referring to Illinois and New York cases in support of its holding). *See gen.,* Brown, *A Long Arm Statute for Massachusetts,* 12 Boston Bar J. 9 (Sept.1968).

**9.** Had Paccar's contacts with Massachusetts been limited to its dealings with MDR, the result here might have been different because of the "passive purchaser" rule. *See Whittaker Corporation v. United Aircraft Corporation,* supra and n. 7, *supra.*

**10.** I note that Paccar is probably subject to suit under § 3(c) of the long-arm statute which gives jurisdiction over nonresidents who cause "tortious injury by an act or omission in this commonwealth." Mass.Gen.Laws ch. 223A, § 3(c). It would appear that at least MDR's unfair trade practices claim arises out of Paccar's dealings with Neville in Massachusetts. *See Murphy v. Erwin-Wasey, Inc.,* 460 F.2d 661 at 664 (1st Cir. 1972).