PETRICCA CONSTRUCTION CO.
vs.
A.C. DE SOTO EQUIPMENT CO., &
Gordon C. MARTIN D/B/A
MARTIN CONSTRUCTION CO.

Civ. A. No. 79-2166-F

United States District Court
D. Massachusetts

February 24, 1981

out of plaintiff's purchase of a portable rock crushing plant from the defendant. It is before the Court today for **de novo** review of Magistrate Princi's recommendation that the Rule 12(b)(2) motion to dismiss for want of personal jurisdiction by defendant A.C. DeSoto Equipment Co., Inc. be denied. 28 U.S.C. §636(b)(1)(C).

## I. Factual Background

The pleadings and supporting affidavits reveal the following substantially undisputed facts. Petricca Construction Co. ("Petricca") is a Massachusetts corporation based in Pittsfield. A.C. DeSoto Equipment Co., Inc. ("DeSoto") is a New York corporation based in Fishers, New York. In April 1979 William Kernahan, the Petricca purchasing agent, saw DeSoto's advertisement in a trade magazine for portable stone crushing machines.

Kernahan contacted DeSoto President Alfred DeSoto[1] to discuss purchase of a suitable crusher. By telephone, Desoto subsequently advised Kernahan that he had located a suitable crusher in Tioga, Pennsylvania. Petricca dispatched three employees to inspect the crusher and to observe it in operation. Petricca thereafter determined to buy the crusher, executed a purchase order, and tendered a certified check for $100,000. An invoice was prepared and sales documents were executed in Tioga, Pennsylvania. The invoice describes the crusher, specifies that the sale is "used, as is, where-is," and specifies delivery as "F.O.B. Tioga, Penna."

Upon completion of the transaction, the crusher was loaded onto a Petricca truck in Tioga, Pennsylvania and hauled to a Petricca job site in Massachusetts. It broke down within ten days and in the course of repairing the problems Petricca learned that the crusher was considerably older than was initially supposed. This action followed, alleging tortious misrepresentation, breach of contract, and violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws c. 93A.

DeSoto concededly does business in New

William A. Darrin, Jr. for the plaintiff.
Larry A. Stumps for the defendant.

## MEMORANDUM

FREEDMAN, D.J. This case arises

---

[1] Alfred DeSoto is the sole officer and employee of A.C. DeSoto Equipment Co., Inc. His actions may be considered interchangeable with that of the corporation for the instant purpose.

York, upper Pennsylvania and upper New Jersey, concentrated within a 200-mile radius of Rochester, New York. It advertises in six newspapers of general circulation in New York and Pennsylvania. One such paper, published in Albany, New York, apparently circulates in Western Massachusetts as well. Advertisements in that newspaper played no part in this transaction. In addition, DeSoto places advertisements in nine trade journals. Of these, at least six have a circulation which might reasonably include Massachusetts. Kernahan appears to have seen an advertisement in one of these publications.

DeSoto admits to a total of five transactions with Massachusetts parties, involving four sales (including this one) and one purchase. All sales were F.O.B. points outside of Massachusetts.

## II. Standards for Long-Arm Jurisdiction

In reliance upon these facts, Petricca contends that in this diversity case the Court has personal jurisdiction over DeSoto by virtue of the Massachusetts long-arm statute, G.L. c. 223A, § 3.[2] Under these circumstances, Massachusetts law is dispositive as to whether DeSoto is amenable to suit. **Marketing & Distribution Resources, Inc. v. Paccar, Inc.,** 460 F.Supp. 990, 991 (D. Mass. 1978). The plaintiff bears the burden of establishing that this Court has jurisdiction. **Lizotte v. Canadian Johns-Manville Co., Ltd.,** 398 F.2d 607 (1st Cir. 1967).

In addressing a claim of personal jurisdiction over a non-resident defendant, the court conducts a two-part inquiry: (1) is the claimed jurisdiction authorized by statute, and (2) is the exercise of jurisdiction compatible with the due process requirements of the United States Constitution. See, **Good Hope Industries, Inc. v. Ryder Scott Co.,** 389 N.E.2d 76, 79 (Mass. 1979). To a court interpreting the Massachusetts long-arm statute, the inquiry is essentially unitary, because the Supreme Judicial Court has interpreted the statute " 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.' " **Automatic Sprinkler Corporation of America v.**

Seneca Foods Corporation [280 N.E.2d 423, 424 (Mass. 1972)]." **Whittaker Corporation v. United Air-Craft Corporation,** 482 F.2d 1079, 1083 (1st Cir. 1973).

## III. Review of Magistrate's Recommendation

In the memorandum in support of its motion, DeSoto argued that § 3 did not support personal jurisdiction. Petricca, in its reply memorandum, limited its arguments in support of jurisdiction to the applicability of § § 3(a), (b) and (d).[3] The Magistrate limited his discussion to the applicability of § 3(d), which he found to support personal jurisdiction in this case. The Magistrate correctly noted that a finding of personal jurisdiction under any subsection of § 3 supports jurisdiction as to the entire action. **Good Hope Industries v. Ryder Scott Co.,** 389 N.E.2d 76, 78 n. 3 (Mass. 1979).

The Magistrate apparently determined that § 3(d) was satisfied because DeSoto "derives substantial revenue from goods used or consumed" in Massachusetts. The defendant takes exception to this conclusion.

I will initially agree with the Magistrate that the $100,000 purchase price constitutes "substantial revenue" within the meaning of § 3(d). As little as $5,000 has been held to satisfy § 3(d). **Mark v. Obear & Sons, Inc.,** 313 F.Supp. 373, 376 (D. Mass. 1970); see, **Carlson Corp. v. University of Vermont,** 402 N.E.2d 483, 486 n. 8 (Mass.

---

[2]Section 3 provides:
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
(a) transacting any business in this commonwealth;
(b) contracting to supply service or things in this commonwealth;
(c) causing tortious injury by an act or omission in this commonwealth;
(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

[3] On this basis, I consider any claims of § 3(c) jurisdiction to be waived.

1980). However, this determination satisfies only one element of § 3(d). In order to carry its burden of showing personal jurisdiction under this subsection, Petricca must also show that DeSoto has "[caused] tortious injury in this commonwealth by an act or omission outside this commonwealth."

The threshold inquiry here is whether Petricca should even be allowed to argue that DeSoto has caused a tortious injury. In c. 223, § 3, the Massachusetts legislature drew a clear distinction between personal jurisdiction arising out of commercial dealings, see § § 3(a) and (b), and personal jurisdiction arising out of tortious action, see § § 3(c) and (d). In its complaint, Petricca has alleged that a breach of contract and a tortious misrepresentation arise out of the same dealings. While recognizing a plaintiff's right to plead alternative theories of recovery, Fed. R. Civ. P. 8(e)(2), I am not prepared to hold that Petricca may evade the legislative purpose expressed in § 3(d) by a bare assertion of tortious misconduct.

The importance of this distinction has been noted in connection with analogous provisions of the New York long-arm statute, C.P.L.R. § 302(a)(2):

> If a plaintiff could, merely by alleging . that a contracting party never intended to fulfill his promise, create a tortious action in fraud, there would be no effective way of preventing almost every contract case from being converted to a tort for jurisdictional purposes.

Stanat Manufacturing Company v. Imperial Metal Finishing Co., 325 F.Supp. 794, 796 (E.D. N.Y. 1971). The problem is an important one, for as the Court observed:

> The plaintiff's lawyer almost always alleges fraud in good faith; for, by the time of the falling out between contracting parties, a prospective plaintiff will usually have some grounds for believing that his opponent never intended to deal with him faithfully. Protestations of the defendant will be met by the argument that they are self-serving. Because it would make little sense to try this threshold issue separately, the allegation of fraud would

have to be assumed to be true in every case.

Id.

The Magistrate did express agreement with the holding in Stanat, but inexplicably declined to apply it here. I find its reasoning persuasive, and its holding appropriate for this case..See also, Leu v. Leu, 481 F.Supp. 899, 901-02 (W.D. Pa. 1979). I therefore find that Petricca has failed to meet its obligation to demonstrate personal jurisdiction under § 3(d).

As an independent basis 'for my conclusion that Petricca has not established § 3(d) personal jurisdiction, I find that Petricca has not adequately alleged "tortious injury in this commonwealth [caused by] an act or omission outside this commonwealth." The Magistrate stated that, in his opinion, plaintiff was supported by the holding in Murphy v. Erwin-Masey, Inc., 460 F.2d 661 (1st Cir. 1972). Murphy established that misrepresentations transmitted by telephone to a Massachusetts resident by an out-of-state corporation constituted a tortious act in Massachusetts for purposes of establishing personal jurisdiction under § 3(c). See also, Whittaker Corporation v. United Aircraft Corporation, 482 F.2d 1079, 1084 (1st Cir. 1973). The holdings of these cases are inapposite to the instant case.

In order to bring DeSoto within the ambit of § 3(d), Petricca must first demonstrate that it has suffered "tortious injury in this commonwealth." The usual application of § 3(d) is to secure personal jurisdiction over, e.g., a foreign manufacturer whose defective product has caused personal injury in Massachusetts. See, Mark v. Obear & Sons, Inc., 313 F.Supp. 373 (D. Mass. 1970). Its applicability to this case is less certain.

In Count I of its complaint, Petricca alleges that DeSoto represented the crusher as a 1966-67 model, when the defendant knew or should have known that it was in fact a 1958 model, "substantially worn, defective, and in need of a great number of replacement parts." First Amended Complaint, ¶ 7. To the extent that this count states a distinct claim in tort, it sounds in deceit. See, Prosser, Law of Torts, § 105 (4th ed., 1971). Deceit consists of a false

representation, by some party who knows or should have known of its falsity, made with the intention of inducing action or reliance, and upon which the plaintiff did in fact act or rely to his damage. Nolan, 37 Massachusetts Practice Series, **Tort Law**, § 111 (1979).

For purposes of this motion, I will assume that the necessary misrepresentations (which are denied in the DeSoto affidavits) occurred, that DeSoto knew or should have known that the crusher was a 1958 model, that he did not reveal these facts to Petricca agents in the expectation that he could thereby close a profitable deal and that Petricca did in fact purchase the crusher in reliance upon the misrepresentation. I will also assume for purposes of § 3(d) that these actions all occurred outside of Massachusetts. Even by indulging these assumptions, I am still not persuaded that Petricca can show personal jurisdiction under § 3(d).

I am troubled by the problem of defining what harm was suffered by reliance upon any misrepresentation. In Count I, Petricca makes no claim that the crusher was falsely represented to be in good repair, or even to be in working order. To the contrary, the claim is limited to DeSoto's alleged representation that the crusher was of a certain age. While it may be true that in certain cases age is directly related to condition or state of repair, there is no indication that this is such a case.

The only fair reading of Count I is that Petricca was deceitfully induced to expend $100,000 for a piece of machinery that was in fact nine years older than represented, giving rise to an inference that Petricca paid more than the crusher was worth. The tort was complete upon the transfer of the purchase price (in Tioga, Pennsylvania) and Petricca's cause of action accrued at that time. The fact that the alleged misrepresentation was not discovered until the crusher was used in Massachusetts does not thereby make Massachusetts the place of injury. That Petricca has incurred major expenses in Massachusetts as a result of acquiring the crusher likewise does not make Massachusetts the place of the injury. See, **Walsh v. National Seating Co., Inc.**, 411 F.Supp. 564, 571 (D. Mass. 1976).

On balance, I am persuaded that any tortious injury that occurred as a result of DeSoto's alleged misrepresentations occurred outside of Massachusetts, and therefore fails to satisfy § 3(d). As a consequence, I reject the Magistrate's recommendation that this Court assert jurisdiction under § 3(d).

## IV. Other Jurisdictional Grounds

Because the Magistrate did not reach the question of whether other provisions of § 3 support personal jurisdiction, the Court must either address these matters now or refer the case for further consideration. On the present state of the record, I am of the opinion that it will be simpler to resolve these jurisdictional issues here.

### A. Section 3(a):

Under § 3(a), personal jurisdiction attaches from "transacting any business in this commonwealth." DeSoto argues that the sale of the crusher to Petricca, even when considered in conjunction with past business dealings with Massachusetts parties, does not constitute the transaction of business in Massachusetts within the meaning of § 3(a).

### 1. Jurisdiction Based Upon Sale of Crusher:

The first phase of the inquiry focuses on whether the sale of the crusher will by itself support § 3(a) jurisdiction. The record indicates a limited series of contacts with Massachusetts in the course of negotiating and closing the crusher sale. DeSoto placed an advertisement in a national trade journal circulated in Massachusetts, to which Petricca responded by making a telephone call from its Massachusetts offices to DeSoto's New York offices. This was the first of nine telephone contacts over the course of approximately one week, with five placed by Petricca from Massachusetts and four placed by DeSoto from New York. William Kernahan Affidavit, ¶ ¶ 5-10; Alfred DeSoto Affidavit, ¶ 10. Inspections and arrangements for shipping the crusher were made on a job site in Pennsylvania, which was also where the paperwork was completed, payment made, and the crusher

loaded on Petricca's truck. There is no dispute that DeSoto's principal place of business is in New York, that it does not maintain an office in Massachusetts, and that it does not own any property in Massachusetts.

On essentially similar facts, the Massachusetts Supreme Judicial Court has held that a foreign corporation has not transacted business in Massachusetts within the meaning of § 3(a) Droukas v. Diver's Training Academy, Inc., 376 N.E.2d 548, 551 (Mass. 1978). While the facts of the present case differ from those of Droukas in several particulars, I am not persuaded that these distinctions compel a different result here.

In Droukas, there were only two direct communications between the out-of-state seller and the Massachusetts purchaser – a phone call placed by the purchaser, and a confirming letter mailed by the seller. Id. In contrast, Petricca and DeSoto exchanged nine calls over a short period. Telephone calls have been considered indicative of whether or not a non-resident corporation was transacting business in the Commonwealth. See, Good Hope Industries v. Ryder Scott Co., 389 N.E.2d 76, 79 (Mass. 1979). However, in Good Hope Industries, the non-resident defendant had initiated more than fifty telephone calls over a one-year period, and these calls were only a small part of the defendant's overall activities. Id. The exchange of phone calls between Petricca and DeSoto is not comparable. While the communications differ in number from Droukas, they do not differ in character and consequently do not warrant a different treatment.

In general, where courts have sustained § 3(a) jurisdiction on the basis of multiple contacts within the course of a single transaction, the frequency and magnitude of those contacts has been substantially greater than displayed in the course of dealing between Petricca and DeSoto. In Good Hope Industries v. Ryder Scott Co., 389 N.E.2d 76 (Mass. 1979), the defendant was a Texas corporation which undertook to appraise properties in Texas for the Massachusetts plaintiff. The defendant sent at least nine written reports to Massachusetts and also initiated the fifty telephone calls previously referred to. Monthly invoices were mailed to Massachusetts over a seventeen-month period, and were paid by checks drawn on Massachusetts banks. The Supreme Judicial Court readily concluded that, on these facts, the defendant had undertaken purposeful activity in Massachusetts. Id. at 82. The Court in Whittaker Corporation v. United Aircraft Corporation, 482 F.2d 1079 (1st Cir. 1973) reached a similar conclusion on the basis of extensive involvement by the defendant in the Massachusetts plaintiff's manufacturing process over a period of five years. See also, Marketing & Distribution Resources Inc. v. Paccar, Inc., 460 F.Supp. 990 (D. Mass. 1978) (30 letters in period of contract negotiation and performance).

Petricca and DeSoto engaged in a flurry of interstate contacts over a brief span, but never approached the volume of contacts in Good Hope Industries and Whittaker Corporation. Moreover, the bulk of the significant contacts occurred in New York or Pennsylvania, where the crusher was inspected and loaded for transportation. On this basis, I cannot find that the contacts between Petricca and DeSoto in the course of negotiating the sale of the crusher support personal jurisdiction under § 3(a). As to this one transaction, Droukas is controlling and § 3(a) jurisdiction is missing.

## 2. Jurisdiction Based on Prior Transactions:

This does not end the inquiry, however, for there is a second and more material distinction between this case and Droukas. There, the Supreme Judicial Court noted that defendant had not previously done business with Massachusetts parties, its only business dealing being the sale of the goods giving rise to the suit. In contrast, DeSoto has engaged in several prior transactions — four sales of equipment (three in 1978, this transaction in 1979) and one purchase of equipment (1977).[4] Reply

[4]In his original affidavit, Alfred DeSoto refers to a total of four transactions — three sales and one purchase. Affidavit of Alfred C. DeSoto, ¶ 7. In his subsequent affidavit, he refers to a total of five transactions. Reply

Affidavit of Alfred C. DeSoto, ¶ 6(a). These circumstances compel the Court to determine whether DeSoto has crossed the threshold of transacting business in Massachusetts.[5]

The first question here is whether DeSoto's conduct now comes within the literal terms of § 3(a). **Carlson Corporation v. University of Vermont,** 402 N.E.2d 483, 485 (Mass. 1980). It appears that prior sales of equipment by DeSoto to Massachusetts residents were accomplished on essentially the same terms as the sale of the crusher. Alfred C. DeSoto Affidavit, ¶ 8. I cannot find that any of these other transactions by themselves amount to the transaction of business in Massachusetts. Moreover, I am not persuaded that the cumulative effect of only four sales changes the result.

A foreign corporation that repeatedly sells to Massachusetts residents must inevitably cross the threshold of "transacting ... business" at some point. Some forum states set that threshold at a single transaction. See, **Vencedor Manufacturing Company, Inc. v. Gougler Industries, Inc.,** 557 F.2d 886, 893 (1st Cir. 1977). Massachusetts clearly allows the foreign corporation more latitude. **Droukas v. Diver's Training Academy, Inc.,** 376 N.E.2d 548, 551-53 (Mass. 1978) see also, **Whittaker Corporation v. United Aircraft Corporation,** 482 F.2d 1079, 1085 (1st Cir. 1973). My interpretation of the facts presented in this case does not reveal any such regular or repeated course of dealing with Massachusetts parties. To the contrary, these sales reflect isolated or exceptional events, with small likelihood of recurrence.[6] See, **Vencedor Manufacturing Company, Inc. v. Gougler Industries, Inc.,** 557 F.2d 886, 891-92 (1st Cir. 1977).

The second prong of the inquiry looks to whether constitutional requirements of due process have been satisfied here. See, **Good Hope Industries, Inc. v. Ryder Scott Co.,** 389 N.E.2d 76, 79 (Mass. 1979); **North American Video Corporation v. Leon,** 480 F.Supp. 213, 217 (D. Mass. 1979). While my determination that the sales in question do not amount to the transaction of business in Massachusetts is dispositive on the § 3(a) claim, it is worth noting that the same result flows from the constitutional analysis.

That analysis of whether personal jurisdiction is supported must begin with **International Shoe Company v. Washington,** 326 U.S. 310 (1945). There, the Supreme Court established that "due process requires only that in order to subject a defendant to a judgment **in personam,** if he be not present within the territory of the forum, he have certain minimum contracts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Id. at 316; see also, **Kulko v. Superior Court,** 436 U.S. 84, 92 (1978).

The Supreme Court has gone on to refine this broad standard with the proviso that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." **Hanson v. Denckla,** 357 U.S. 235, 253 (1958). However, as the First Circuit Court of Appeals has noted, even this formulation is not without its problems:

It is hard to say when a corporation has "purposefully" availed itself of "the privilege of conducting activities within the forum State," or when it has invoked "the benefits and protections" of a state's laws. **International Shoe** stands as a warning that conclusory labels such as "presence" or "purposefully availing" should not replace a practical

---

Affidavit of Alfred C. DeSoto, ¶ 6(a). Because of the nature of this motion, I have resolved this discrepancy against DeSoto, and have used the higher figure.

[5]In this connection, I take note of the "passive purchaser" rule enunciated in **Whittaker Corporation v. United Aircraft Corporation,** 482 F.2d 1079 (1st Cir. 1973). In considering whether DeSoto has transacted business in Massachusetts, I consequently will not take account of the single purchase of equipment from a Massachusetts party, respecting the forum's interest "in not discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts...." Id. at 1085. I do not believe that the result would be different even if this purchase was considered.

[6]DeSoto represents that its market is geographically restricted by the transportation costs of the heavy equipment it deals in. Alfred C. DeSoto Affidavit, ¶ 5.

concern for the facts of each case. Hanson's language suggests that some sort of voluntary association with the forum is a jurisdictional prerequisite. Further elaboration of Hanson's formula should depend on a case-by-case analysis of contacts rather than a parsing of the Court's language. · **Vencedor Manufacturing Company, Inc. v. Gougler Industries, Inc.,** 557 F.2d 886, 890 (1st Cir. 1977). In making such an analysis, I am directed to consider a number of pertinent factors — "the nature and the purpose of the contacts, the connection between the contacts and the cause of action, the number of contacts, the interest of the forum, and the convenience and fairness to the parties."[7] **Whittaker Corporation v. United Aircraft Corporation,** 482 F.2d 1079, 1083 (1st Cir. 1973).

Even with this assistance, the inquiry is "one in which few answers will be written 'in black and white. The greys are dominant and even among them the shades are innumerable.' " **Kulko v. Superior Court,** 436 U.S. 84, 92 (1978), citing **Estin v. Estin,** 334 U.S. 541, 545 (1948). Analyzing DeSoto's contacts with Massachusetts for indicia of "voluntary association," it is possible to isolate the elements of advertising, personal communication, and financial exchange.

Advertising poses the closest question, and has been considered a significant factor supporting long-arm jurisdiction. See, **Vencedor Manufacturing Company, Inc. v. Gougler Industries,** 557 F.2d 886, 891 (1st Cir. 1977). However, the fact that Massachusetts has specifically held advertising of the type involved here inadequate to satisfy even the literal requirements of § 3(a) neutralizes the significance of this factor. See, **Droukas v. Diver's Training Academy, Inc.,** 376 N.E.2d 548, 551-52 (Mass. 1978). The other factors, of personal communication and financial exchange, are of lesser importance. While both may substantiate a finding of constitutionally adequate voluntary association, see, **Good Hope Industries, Inc. v. Ryder Scott Company,** 389 N.E.2d 76, 82 (Mass. 1979), the level of such contacts in this case is constitutionally inadequate.

An examination of the other factors enunciated in **Whittaker** substantiates this conclusion. There is certainly a connection between some of the Massachusetts contacts and the cause of action, but by far the most significant contacts between Petricca and DeSoto occurred in Pennsylvania where the crusher was inspected and the sale finalized. Such conduct does not evidence · any voluntary association with Massachusetts. The number of contacts is likewise inadequate to constitute a purposeful availment of the privilege of doing business in Massachusetts.

While Massachusetts certainly does have an interest in providing its corporations with redress for breach of contract, that interest does not outweigh the inherent unfairness of compelling DeSoto to defend in this district. Where any alleged misrepresentation or breaches of contract occurred in either New York or Pennsylvania, it would appear that the convenience of the parties would best be served by conducting litigation in either forum.

### B. Section 3(b):

Section 3(b) recognizes personal jurisdiction over a defendant where the plaintiff's cause of action arises from the defendant's "contracting to supply services or things in this commonwealth." Petricca correctly observes that the phrase "in this commonwealth" relates to the places where the contract will be fulfilled, and not to the place where it is made. **Droukas v. Diver's Training Academy, Inc.,** 376 N.E.2d 548, 553 (Mass. 1978). However, this observation does not address the question properly before the Court, namely whether DeSoto contracted "to supply" the crusher in Massachusetts.

The crusher was sold "F.O.B. Tioga, Penna." and it is this phrase which is dispositive. This term is defined by the Uniform

---

[7]The Massachusetts Supreme Judicial Court has adopted a similar standard, citing **Whittaker. Good Hope Industries, Inc. v. Ryder Scott Co.,** 389 N.E.2d 76, 80 (Mass. 1979) ("whether there was some minimum contact with the Commonwealth which resulted from an affirmative, intentional act of the defendant, such that it is fair and reasonable to require the defendant to come into the State to defend the action.")

234

Commercial Code:

Unless otherwise agreed the term F.O.B. (which means "free on board") at a named place, even though used only in connection with the stated price, is a delivery term under which

(a) when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in this Article and bear the expense and risk of putting them into the possession of the carrier.

Mass. Gen. Laws, c. 106, § 2-319(1)(a).

Courts have held that delivery terms are irrelevant to the issue of whether a defendant is "transacting business" in a forum. See, Vencedor Manufacturing Company, Inc. v. Gougler Industries, 557 F.2d 886, 890 (1st Cir. 1979); see also, Droukas v. Diver's Training Academy, Inc., 376 N.E.2d 548, 554 n. 8 (Mass. 1978). However, the situation is different here where the terms of shipment are of utmost relevance to a determination of whether DeSoto has contracted "to supply" within the meaning of § 3(b). Droukas v. Diver's Training Academy, 376 N.E.2d 548, 553-54 (Mass. 1978).

In view of the statutorily defined obligation attaching to the term "F.O.B.," I find that DeSoto has not contracted "to supply . . . things in this commonwealth," and § 3(b) is not involved. Id. at 554. DeSoto's shipping responsibility ended when the crusher was loaded on Petricca's truck in Pennsylvania.

The question of § 3(b) jurisdiction is also subject to the same constitutional analysis applied in Part IV, A, 2 of this Memorandum. For essentially the same reasons, I am convinced that shipment F.O.B. does not reflect a "[purposeful availment] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

### V. Conclusion

Upon de novo review of the Magistrate's recommendation, I find that I cannot agree with his determination that Mass. Gen. Laws, c. 223A, § 3(d) supports the assertion of personal jurisdiction by this Court.

Moreover, I find that personal jurisdiction is not established by any other provision of § 3.

Accordingly, I decline to accept the Magistrate's recommendation that defendant's motion to dismiss be denied. The defendant's motion shall be allowed. An appropriate order shall issue.

Frank H. Freedman
United States District Judge